UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
                                      :
DARIEN MOORE,
                                      :
                  Petitioner,
                                      :        **OPINION**
            - against -
                                      :        03 Civ. 8644 (DC)
WARDEN, SOUTHPORT CORRECTIONAL
FACILITY,                             :

                  Respondent.         :

- - - - - - - - - - - - - - - - - -x

**APPEARANCES:**    DARIEN MOORE
                    Petitioner <u>Pro</u> <u>Se</u>
                    Southport Correctional Facility
                    P.O. Box 2000
                    Pine City, NY  14871

                    ELIOT SPITZER, ESQ.
                    Attorney General of the
                         State of New York
                    Attorney for Respondent
                         By:  Michelle Maerov, Esq.
                              Luke Martland, Esq.
                              Assistant Attorneys General
                    120 Broadway
                    New York, NY  10271

**CHIN, D.J.**

        <u>Pro</u> <u>se</u> petitioner Darien Moore brings this petition for

a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge

his July 28, 1998 convictions in the New York State Supreme

Court, New York County, for Criminal Possession of a Controlled

Substance in the Third Degree, Assault in the Second Degree,

Tampering with Physical Evidence, and Resisting Arrest.  Moore

claims that the prosecutor violated his due process rights by (1)

breaching the secrecy of his grand jury proceedings, (2)

withholding exculpatory material, and (3) committing misconduct

during her summation.[1]  For the reasons set forth below, the
petition is denied.

**BACKGROUND**

**A.    The Facts**

On the afternoon of October 1, 1997, plainclothes New
York City police officers Peter Cunneen, Michael Ciardullo, and
Jeffery Quod were on patrol in the vicinity of 41st Street and
Broadway in Manhattan.  (T. 196-98).[2]  From across Broadway, the
officers watched as two or three people gathered near a man they
later identified as Moore.  Moore displayed a "white substance"
in his hand to a man later identified as Steven Jones, who began
to count money.  (T. 200-01, 233-34, 377, 455).  Suspecting a
drug sale, the officers approached the group, identified
themselves as police, and placed several individuals against a
wall.  (T. 205, 283-84, 377, 382, 460-61).  Cunneen, while
putting Moore against the wall, noticed that Moore was chewing on
a "frothing," "white powder."  (T. 203).  Cunneen called out:
"He's chewing it, he's eating it."  (Id.).  Moore then turned
around and threw punches at Officer Cunneen's torso.  (T. 203-
04).  A struggle ensued as Cunneen tried to handcuff Moore, and
the two fell to the ground.  (T. 204).  Ciardullo went to help

---

[1]     Moore raised these issues in his habeas petition and
supported them with two memoranda written for the New York State
courts.  In a letter to this Court dated February 7, 2005, Moore
wrote that he would not file any other papers in support of his
petition.

[2]     Numbers preceded by a "T." refer to the pages of the
trial transcript.

Cunneen while Quod monitored the other suspects and radioed for assistance.  (T. 347-75, 382, 456).

While on the ground, Moore refused to put his hands behind his back and continued to chew.  (T. 207-08).  The officers struggled with him for approximately five minutes.  (T. 207).  Officers Edward Murphy and Charles McLaren arrived in response to Quod's broadcast, and Murphy was able to handcuff Moore.  (T. 303-05).  Moore then spit out a "white tissuey plastic" bag with some powder in it.  (T. 208, 508, 530).  Ciardullo collected the bag and arranged for a chemical analysis of the contents.  (T. 463-64).  The analysis, conducted in June 1998 by police chemist Eugene Gamburg, revealed that the bag contained cocaine.  (T. 561-65).

Approximately five minutes after Moore was handcuffed, Cunneen went to St. Vincent's Hospital because he felt extreme pain while walking.  (T. 209).  The hospital diagnosed the problem as a fractured bone in his right foot.  (T. 351-52).[3] Meanwhile, Murphy and McLaren transported Moore to their stationhouse in a police van.  In the van, Moore complained of a stomachache, asked to go to a hospital, and vomited.  (T. 308-09).  At the stationhouse, Moore again complained of pain and asked to go to a hospital.  (T. 309, 421).  Murphy and McLaren drove Moore to Bellevue Hospital, where he reported that his ribs

---

[3]     The prosecutor called Dr. Joseph Lalia, a podiatrist, to testify as an expert about Officer Cunneen's injury.  Dr. Lalia confirmed the diagnosis of St. Vincent's Hospital.  (T. 351-52).

were hurting and was examined. (T. 311). Moore's hospital records indicated that his right seventh rib was fractured.[4]

After hospital staff x-rayed Moore, the officers handcuffed him to a gurney. Moore became "agitated" when he noticed that his jacket was missing, and he told Murphy and McLaren that if he did not get his jacket back, he would "fight [them] five times as hard as the cops out in the street." (T. 313). Moore stood up on the gurney, "screaming and hollering," and the officers brought him into the hallway to avoid allegations of police brutality. (T. 313-14). Moore then became calm. (T. 314).

## B. Procedural History

### 1. State Court Proceedings

#### a. The Indictment and Pre-Trial Motion

On December 12, 1997, in the Supreme Court of New York, County of New York, a grand jury indicted Moore for criminal possession of a controlled substance, assault, tampering with physical evidence, and resisting arrest. Before his trial, Moore moved pursuant to N.Y. Crim. Proc. Law § 210.45 for a hearing to

---

[4] Moore's hospital records were submitted by the prosecutor as evidence. (T. 589-90). Moore did not present an expert to interpret the records for the jury. The hospital's records show the following notations: under "Progress Notes/Final Assessment" appears "® 7th rib fx"; and under "Diagnosis" appears "Contusions, ® 7th fx." (Bellevue Hosp. Ctr. Rep.). The symbol "®" represents "right side," and "fx" is an abbreviation for "fracture of a bone." Dan J. Tennenhouse, <u>Attorneys Medical Deskbook</u> § 5.3 (3d ed., updated September 2004), WL MEDDESK § 5:3. The prosecutor never suggested that the cause of Moore's injuries was an event other than the struggle with the officers.

determine whether the prosecutor had violated the secrecy of the grand jury proceedings by discussing his grand jury testimony with state witnesses.  <u>See</u> N.Y. Crim. Proc. § 210.45 (McKinney 1993 & Supp. 2005).  An attorney for Moore filed an affidavit in support of the motion, swearing that on December 10, 1997, after Moore's grand jury testimony, she witnessed the prosecutor discuss the proceedings with several of the testifying officers.  (<u>See</u> Pet. App. Br. at 8).[5]  Specifically, the attorney claimed that while waiting for an elevator, she had overheard the prosecutor comment to the officers, "I asked him about the way he acted in the hospital.  I hope that was O.K."  (<u>Id.</u>).  The prosecutor's written response to the motion stated that she did not remember making these comments.  (<u>Id.</u>).  The court denied Moore's motion.

### b.   **The Trial**

Moore's trial began on June 24, 1998 and lasted five days.[6]  Officers Cunneen, Murphy, Quod, McLaren, and Ciardullo were among the witnesses for the prosecution.  Moore did not call witnesses or present evidence.  (<u>See</u> T. 576 (defense counsel acknowledging this fact while resting)).  The defense attacked the prosecution's case by arguing that Moore was the victim of

---

[5]     "Pet. App. Br." represents Moore's brief for the New York Appellate Division, First Department, dated January 28, 2002.  Copies of the § 210.45 motion documents were not submitted to this Court.

[6]     The trial was held on June 24, 25, 29, and 30 and July 1, 1998.

police brutality. (See, e.g., T. 184-92 (defense counsel's opening statement); T. 591-615 (defense counsel's summation)).

While cross-examining Ciardullo on June 29, the defense learned of a document that was not produced during discovery: a police voucher for Moore's personal property when he was arrested. (T. 481-82). Ciardullo testified that he was the police officer in charge of the paperwork for Moore's case and that the voucher was at his stationhouse. (T. 482-83). The court interrupted the cross-examination, ordered Ciardullo to bring his case file the following day, and adjourned until then. (T. 484).

In addition to the property voucher, Ciardullo's file contained two Desk Appearance Tickets ("DATs") issued to individuals detained during Moore's arrest. (T. 485-87, 490).[7] Defense counsel, seeing the DATs for the first time on the morning of June 30, moved for a mistrial and dismissal of the case or, alternatively, for a two-week adjournment to track down the DAT recipients as potential witnesses. (T. 485-88). The court denied the motions but gave Moore the option of cross-examining Ciardullo and Quod about the DATs. (T. 492).[8] Moore declined this offer. (T. 498-99). Before Ciardullo took the stand again, the court instructed him that he would not be

_____

[7]    The DATs were issued for disorderly conduct. (T. 492).

[8]    Quod had testified previously that he had not issued a summons or a ticket to any of the detained individuals. (T. 387). Nevertheless, sidebar conversations from the trial record reveal that Quod had filled out one of the DATs. (T. 487).

questioned about the DATs and that he was not to volunteer information about them.  (T. 501).  After Ciardullo testified, the parties rested and gave summations.

On the following morning, the judge charged the jury. That afternoon, the jury found Moore guilty of all charges.  On July 28, 1998, Moore was sentenced to concurrent terms of imprisonment of eight to sixteen years for possessing a controlled substance, seven years for assault, one year for tampering with evidence, and one year for resisting arrest. (Sent. T. 10).[9]

### c.   **The Post-Trial Motion**

On January 16, 2001, Moore moved the trial court pursuant to N.Y. Crim. Proc. Law § 440.10(1)(b), (g), and (h) to vacate his conviction.  <u>See</u> N.Y. Crim. Proc. Law § 440.10 (McKinney 2005).  He argued that the prosecution had committed a <u>Brady</u> violation by failing to produce the DATs in a timely manner.  He maintained that the DATs would have led to exculpatory evidence that could not otherwise have been produced with due diligence at trial.  Moore supported his motion with an affidavit from one of the DAT recipients, Johnnie Burgess (the "Burgess Affidavit").  In relevant part, Burgess swore: (1) "I witnessed [Moore's] arrest in its entirety from the time the police appeared until Mr. Moore was led away in handcuffs"; (2) "[a]t no time during these events did I witness Mr. Moore either

_____

[9]     Numbers preceded by "Sent. T." refer to the pages of the sentencing transcript.

punch or kick a Police Officer or anyone else at the scene"; and
(3) "[i]f I had been called to testify at the trial of Mr. Moore,
I would have so testified." (Burgess Aff. ¶¶ 2, 4, 5). Moore
argued that there was at least a probability that Burgess's
testimony would have produced a different verdict.

The court denied Moore's motion. It held that no
evidence indicated that the prosecution was "aware that [it]
possessed any information which would have tended to exculpate
[Moore]." People v. Moore, No. 9966/97, slip op. 2 (N.Y. Sup.
Ct. Apr. 23, 2001). The court further held that the Burgess
Affidavit did not create a reasonable probability of a different
verdict. The court pointed out that although Burgess did not see
Moore punch or kick any officer, his affidavit did not address
whether the police were making a lawful arrest. Id. at 2-3. The
court also noted that "the People were not required to prove that
the defendant intentionally caused physical injury to the
officer, just that he intended to prevent a lawful arrest and
thereby caused physical injury to the officer." Id. at 3; cf.
N.Y. Penal Law § 120.05(3) (McKinney 2004).

### d.  **The Appeal**

Moore appealed the trial court's rulings and his
conviction to the New York Appellate Division, First Department.
He repeated his Brady arguments and added claims of prosecutorial
misconduct. Moore also argued that he was entitled to a hearing
on whether the prosecutor violated the secrecy of his grand jury

proceedings by talking to witnesses about his grand jury
testimony.

The Appellate Division rejected all of Moore's
arguments and affirmed the trial court on July 2, 2002.  <u>People</u>
<u>v. Moore</u>, 745 N.Y.S.2d 157 (1st Dep't 2002).  It agreed with the
trial court that "there [was] no reasonable possibility that
earlier disclosure of the desk appearance tickets . . . would
have affected the verdict."  <u>Id.</u>  The Appellate Division also
found that "there [was] no indication that, during trial, [Moore]
made any effort to locate either of the witnesses, insisting
instead on a mistrial or lengthy continuance."  <u>Id.</u>  Regarding
Moore's claims of prosecutorial misconduct, the Appellate
Division held that "the challenged portions of the summation,
while improper, [did] not warrant reversal."  <u>Id.</u>  Finally,
addressing Moore's complaint about the grand jury proceedings,
the Appellate Division held that "even assuming the truth of the
defendant's allegations, there was no impairment of the integrity
of the proceedings warranting dismissal."  <u>Id.</u> (citations
omitted).

Moore sought permission to appeal the Appellate
Division's decision.  On October 22, 2002, the Court of Appeals
issued a certificate denying the request.  <u>People v. Moore</u>, 98
N.Y.2d 770 (2002).

**2.   <u>The Habeas Petition</u>**

Moore's habeas petition, dated September 2, 2003, was
received by this Court's Pro Se Office on September 9, 2003.  In

a letter dated October 29, 2004, Moore asked the Court to dismiss his petition.  On December 16, 2004, the Court granted the dismissal without prejudice.  In the meantime, by letter dated December 13, 2004, Moore wrote the Court saying that he did not wish to withdraw the petition.  On December 30, 2004, the Court vacated the December 16 order and reinstated Moore's petition.

In his petition, Moore argues that the prosecutor violated his due process rights by (1) breaching the secrecy of his grand jury proceedings, (2) withholding exculpatory material, and (3) committing misconduct during her summation.

## DISCUSSION

### A.  The Standard of Review

To obtain relief under 28 U.S.C. § 2254, a petitioner must show that he is in state custody in violation of the Constitution or laws of the United States, and must prove by a preponderance of the evidence that his constitutional rights have been violated.  See 28 U.S.C. § 2254; Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).  Section 2254(d)(1), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-32, 110 Stat. 1214 (1996), "places a new constraint on the powers of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court."  See Williams v. Taylor, 529 U.S. 362, 412 (2000) (O'Connor, J., concurring).  The AEDPA provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d)(1), (2).

The statute has been interpreted to require a petitioner to show not only that clearly established federal law was erroneously or incorrectly applied, but that the application was unreasonable. See Williams, 529 U.S. at 411; see also Lockyer v. Andrade, 538 U.S. 63 (2003). As the Second Circuit has explained: "A state court decision is 'contrary to' Supreme Court precedent only if it either 'arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law' or 'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [the opposite result].'" Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001) (quoting Williams, 529 U.S. at 405). The standards set forth by the AEDPA apply to all habeas petitions filed after the statute's effective date of April 24, 1996. See Boyette v. Lefevre, 246 F.3d 76, 88 (2d Cir. 2001) (citing Williams, 529 U.S. at 402).

**B.   The Grand Jury Proceedings**

Moore's first argument is that he is entitled to a hearing on whether the prosecutor violated the secrecy of his grand jury proceedings.  He alleges that the prosecutor breached the secrecy requirement by discussing his grand jury testimony with prosecution witnesses.

**1.   Procedural Default**

Respondent argues that Moore's grand jury claim is procedurally barred because he did not present it before the state courts as an issue of federal law.  "[A] habeas petitioner seeking to upset his state conviction on federal grounds must first have given the state courts a fair opportunity to pass upon his federal claim."  <u>Daye v. Att'y Gen. of New York</u>, 696 F.2d 186, 191 (2d Cir. 1982) (en banc).  In <u>Daye</u>, the Second Circuit explained that:

> the ways in which a state defendant may
> fairly present to the state courts the
> constitutional nature of his claim, even
> without citing chapter and verse of the
> Constitution, include (a) reliance on
> pertinent federal cases employing
> constitutional analysis, (b) reliance on
> state cases employing constitutional analysis
> in like fact situations, (c) assertion of the
> claim in terms so particular as to call to
> mind a specific right protected by the
> Constitution, and (d) allegation of a pattern
> of facts that is well within the mainstream
> of constitutional litigation.

<u>Daye</u>, 696 F.2d at 194.

I find that Moore failed to give the state courts a fair opportunity to adjudicate any federal issue arising out of

his grand jury claim. First, when presenting this claim to the Appellate Division, Moore did not refer to the Federal Constitution. Second, Moore did not cite any federal or state cases applying a federal constitutional analysis to grand jury proceedings. (See Pet. App. Br. at 31-32 (citing People v. Sayavong, 83 N.Y.2d 702 (1994); People v. Burch, 625 N.Y.S.2d 309 (3d Dep't 1995); Goldberg v. Extraordinary Special Grand Juries, 418 N.Y.S.2d 695 (4th Dep't 1979)). Third, Moore's assertions do not call to mind a specific right protected by the Constitution: the secrecy of grand jury proceedings is rooted only in a "long 'tradition'" that "'is not . . . absolute.'" Craig v. United States, 131 F.3d 99, 103 (2d Cir. 1997) (quoting In re Biaggi, 478 F.2d 489, 492 (2d Cir. 1973)). Finally, Moore's claim -- that the prosecutor discussed his grand jury testimony with state witnesses -- does not present facts that are typical of mainstream constitutional litigation. See Midland Asphalt Corp. v. United States, 489 U.S. 794, 802 (1989) ("Only a defect so fundamental that it causes the grand jury no longer to be a grand jury, or the indictment no longer to be an indictment, gives rise to the constitutional right not to be tried. An isolated breach of the traditional secrecy requirements does not do so."). In sum, as Moore did not give the state courts a fair opportunity to pass on any federal issue arising out of his grand jury claim, his argument is procedurally barred. See Daye, 696 F.2d at 190-91.

## 2. **The Merits**

Assuming, <u>arguendo</u>, that Moore's grand jury challenge
is not barred, it still fails.  Even assuming there was a
violation of the confidentiality provisions applicable to grand
jury proceedings, the integrity of the petit jury's verdict was
not undermined.  The Constitution does not obligate states to
indict defendants by grand juries.  <u>Hurtado v. California</u>, 110
U.S. 516, 534-35 (1884).  Although "[g]rand jury proceedings are
secret" under New York law, N.Y. Crim. Proc. Law § 190.25(4)
(McKinney 1993 & Supp. 2005), claims of deficiencies in state
grand jury proceedings, where rendered harmless by a petit jury,
are not cognizable in a habeas corpus proceeding in federal
court.  <u>See</u> <u>Lopez v. Riley</u>, 865 F.2d 30, 32-33 (2d Cir. 1989)
(holding that where a properly instructed petit jury in a state
court heard all the relevant evidence and convicted the
defendant, the defendant's claims regarding the sufficiency of
evidence before the grand jury, the use of misleading and
prejudicial evidence in grand jury proceedings, and the legal
instructions given to the grand jury could not be raised in a
habeas petition under 28 U.S.C. § 2254); <u>Cadilla v. Johnson</u>, 119
F. Supp. 2d 366, 371 (S.D.N.Y. 2000).  Here, the petit jury
convicted Moore based on the evidence presented at trial.  The
trial court's denial of Moore's pre-trial motion was not contrary
to, and did not involve an unreasonable application of, clearly
established federal law.  As a result, the claim is denied on the
merits as well.

**C.  The Brady Claim**

Moore's next claim is that the prosecutor violated his due process rights by withholding the DATs.  He argues that if the prosecutor had disclosed the DATs in a timely fashion, the DAT recipients could have testified and contradicted the prosecution's witnesses, resulting in a different verdict.

**1.  Applicable Law**

Brady v. Maryland, 373 U.S. 83 (1963), imposes a constitutional duty on the prosecution to disclose to the accused favorable evidence bearing on the issue of guilt.  See Brady, 373 U.S. at 87.  "There are three components to a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  Leka v. Portuondo, 257 F.3d 89, 98 (2d Cir. 2001) (quoting Strickler v. Greene, 527 U.S. 263, 281-82 (1999)).

To determine the existence of the third element, prejudice, the Second Circuit examines whether the withheld evidence was material.  See Boyette v. Lefevre, 246 F.3d 76, 91-92 (2d Cir. 2001) ("The suppression of exculpatory documents does not cause a constitutional violation unless the documents are material, i.e., 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)); Leka, 257 F.3d at 103-04.

That is, "a <u>Brady</u> violation occurs only where the government suppresses evidence that 'could reasonably [have been] taken to put the whole case in such a different light as to undermine confidence in the verdict.'" <u>United States v. Coppa</u>, 267 F.3d 132, 139 (2d Cir. 2001) (quoting <u>Kyles v. Whitley</u>, 514 U.S. 419, 435 (1995)). Similarly, the Supreme Court has held that "there is never a real '<u>Brady</u> violation' unless the [government's] nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." <u>Strickler</u>, 527 U.S. at 281. The burden of proving such a probability rests on the petitioner. <u>Id.</u> at 291.

### 2. **Application**

Moore argues that the prosecutor committed a <u>Brady</u> violation by withholding the DATs. He maintains that the prosecutor prevented the defense from calling the DAT recipients to testify and that, at the very least, Johnnie Burgess's testimony would have undermined the prosecution's case. I find, however, that Moore has not met his burden of proving a <u>Brady</u> violation because he fails to demonstrate that the testimony of the DAT recipients had a reasonable probability of producing a different verdict.[10]

Moore's only showing of the DAT recipients' testimony is the Burgess Affidavit. The Burgess Affidavit was produced two

---

[10]    Accordingly, I do not address the other elements of a <u>Brady</u> violation, i.e., whether the prosecutor suppressed the DATs or whether Burgess's testimony was truly favorable to Moore.

years after Moore's conviction and simply states that Burgess did not witness Moore "either punch or kick a Police Officer or anyone else at the scene." (Burgess Aff. ¶ 4). If Burgess had testified during Moore's trial, his testimony would have arguably contradicted the statements of Officers Cunneen and Ciardullo that Moore threw punches at Cunneen when arrested. (T. 203, 456). Hence, at best, Burgess's testimony would have cast doubt on Cunneen's and Ciardullo's credibility.

The Burgess testimony, however, would not have undermined confidence in the verdict. The Burgess Affidavit was of no relevance to the charges of possessing narcotics, tampering with physical evidence, and assault.[11] As to the charge of resisting arrest, Burgess's assertion that Moore did not punch or kick fails to undermine the detailed testimonies of Cunneen, Murphy, Quod, and Ciardullo that Moore was otherwise struggling with the officers for five minutes as they tried to handcuff him. (T. 203-08, 304-07, 374-79, 462-63). In other words, the affidavit does not create a reasonable probability that Moore's conviction would have been different if the prosecutor had promptly disclosed the DATs and Burgess had testified. Even assuming Moore did not punch or kick the officers, the evidence showed overwhelmingly that he resisted arrest while trying to

---

[11] As the trial court discussed in denying Moore's post-trial motion, Moore did not have to attack Cunneen to be found guilty of assault. Under New York law, a defendant can be guilty of assault if he simply resists arrest and his actions injure an officer. See, e.g., N.Y. Penal Law § 120.05(3). Therefore, Burgess's statement about punching or kicking is not dispositive regarding the assault charge.

ingest or destroy physical evidence -- narcotics.  See United States v. Payne, 63 F.3d 1200, 1209-10 (2d Cir. 1995) (finding that although the government had suppressed an affidavit favorable to the defendant, there was no Brady violation because the affidavit would have contradicted "but a fraction of the [testimony] linking" the defendant to the crime); cf. United States v. Orena, 145 F.3d 551, 559 (2d Cir. 1998) (holding "the strength of the independent evidence of appellees' guilt increases the degree of significance that would need to be ascribed to the withheld impeachment evidence in order for it reasonably to undermine confidence in the verdict"); United States v. Gotti, No. S4 02 Crim. 743 (RCC), 2004 WL 32858, at *3-4 (S.D.N.Y. Jan. 6, 2004) (denying a pre-trial motion and finding that defendants were not prejudiced by the unavailability of two alleged witnesses because defendants failed to provide details as to how the witnesses would exculpate them).  As Moore fails to demonstrate a reasonable probability of a different verdict, the trial court did not err when it rejected his arguments both during and after trial that the late disclosure of the DATs was prejudicial.  Because Moore has failed to demonstrate that clearly established federal law was incorrectly and unreasonably applied, he has failed to meet the high standards of the AEDPA, and his Brady claim is denied.

## D.  **Prosecutorial Misconduct**

Moore's final argument is that the prosecutor committed misconduct during her summation.

### 1. __Applicable Law__

The standard of review for a habeas claim of prosecutorial misconduct is whether the prosecutor engaged in "'egregious misconduct . . . amount[ing] to a denial of constitutional due process.'" Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 647-48 (1974)). A reviewing court must determine whether the prosecutor's remarks were "'so prejudicial that they rendered the trial in question fundamentally unfair.'" Floyd, 907 F.2d at 353 (quoting Garofolo v. Coomb, 804 F.2d 201, 206 (2d Cir. 1986)). Improper summation remarks "must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error." United States v. Young, 470 U.S. 1, 12 (1985). To determine whether a prosecutor's summation caused "substantial prejudice," the Second Circuit has established a three-factor test considering (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the improper statements. Floyd, 907 F.2d at 355.

### 2. __Application__

Moore claims that four of the prosecutor's summation comments amounted to prosecutorial misconduct. Applying the Second Circuit's test in Floyd, I find that the comments did not substantially prejudice the trial. Moore's claim of prosecutorial misconduct is denied.

### a.   The Severity of the Misconduct

Three of the four comments challenged by Moore were responses to Moore's counsel's preceding summation.[12]  First, Moore claims that the prosecutor improperly shifted the burden of proof by telling the jury, "You didn't hear any testimony or any evidence in this case that the defendant was beat like an animal, but you do know that he was putting up quite a ruckus at the hospital."  (T. 646).  This statement merely echoed the following comment made during defense counsel's summation:

> If you're beaten like a dog, they beat you
> like an animal, and you're in the hospital,
> and several hours later you're alone with 2
> police officers, you get a little concerned.
> . . . [W]ould you be just silent, or would
> you raise a little bit of a ruckus also[?]

(T. 599-600).  Hence, the prosecutor did not shift the burden to the defense; rather, she was only responding to defense counsel's comment.

Second, Moore argues that the prosecutor shifted the burden of proof by speculating about evidence that was not presented at trial.  Officer Quod testified that radio calls for officer assistance are generally tape recorded (T. 393, 583-84), but no tapes or transcripts of his broadcast were produced at trial.  (T. 581-82).  The prosecutor addressed the issue during her summation by asking, "[W]hat do you expect that that call said?  Well, I think it might have said something like a ten

---

[12]    After the parties rested, Moore's counsel gave the first summation.  The prosecutor's summation followed.  There was no rebuttal.

eight five." (T. 647). Although the prosecutor should have refrained from using the phrase "I think," there was a factual basis for her comment: Officer Quod had testified that "ten eight five" represents "officer in need of assistance." (T. 386). Moreover, previously, defense counsel had made the content of the broadcast an issue by stating:

> You heard it, call 911, officer need [sic] assistance. I think I went over it a thousand times with 2 or 3 people. Should be recorded. Where is it? Did you hear it? Did you hear the transmission?

(T. 603).

Moore's third argument is that the prosecutor mischaracterized his behavior at the hospital by describing him as "yelling and screaming, beat me, beat me. . . . Beat me, hit me, kick me. I'm going to fight you five times as hard as I fought the cops on the street." (T. 642-43). Moore claims that these comments distorted Officer Murphy's testimony that Moore had said, "I'll fight you five times as hard as the cops out in the street." (T. 313). Defense counsel, however, had likewise tailored Murphy's testimony during his summation by stating, "Now, what did those cops tell you? What did he say? They just beat me earlier, I do not want to be beat again. That's what he told them, I don't want to be beat again." (T. 599). The prosecutor was merely putting her spin on the testimony, just as defense counsel had done.

As the prosecutor's first three comments were responses to Moore's counsel's summation, their effect on the trial was not

substantially prejudicial.  Where a prosecution comment is a rejoinder to defense counsel's comments, that factor ameliorates the effect of an objectionable prosecution comment upon the fairness of a trial.  See, e.g., United States v. Tutino, 883 F.2d 1125, 1136 (2d Cir. 1989); United States v. Modica, 663 F. 2d 1173, 1181 (2d Cir. 1981).  "Defendant cannot now complain about the issues raised and the atmosphere created by his own making through the defense summation."  United States v. Tocco, 135 F.3d 116, 130 (2d Cir. 1998).

The fourth summation comment that Moore protests raises a more substantial issue, but still it is not enough to vitiate Moore's conviction.  Moore argues that the prosecutor mischaracterized his fractured rib as a contusion with the following comment:

> [W]hen [Moore's] X-rays came back, a person
> named Doctor Cohen, Doctor Cohen puts a
> contusion, on the right 7th rib.  A
> contusion.  Nothing about a break, nothing
> about a fracture.  Defendant got a booboo on
> his right rib.  Read these medical records.
> His ribs were not fractured.  They were not
> broken.  He got a contusion.

(T. 638-39).  The prosecutor's comment was incorrect because the notations on Moore's hospital records revealed that he did in fact sustain a fractured rib.  The Supreme Court has suggested that when a prosecutor "manipulate[s] or misstate[s] the evidence," the defendant is deprived of a fair trial.  See, e.g., Darden v. Wainwright, 477 U.S. 168, 181-82  (1986) (holding that the prosecutors' improper statements did not warrant a new trial because "the prosecutors' argument did not manipulate or misstate

the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent" and because "[m]uch of the objectionable content was invited by or was responsive to the opening summation of the defense"); cf. Giglio v. United States, 405 U.S. 150, 153 (1963) ("[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice.").

After the prosecutor made these statements, defense counsel moved for a mistrial or, alternatively, for an instruction to disregard the inaccurate statements. (T. 655-58). The trial judge denied both requests, reasoning that the medical records were "available to the jury for their [sic] review and their [sic] own interpretation, since an expert wasn't called to interpret them." (T. 660).

I find the prosecutor's comment improper but not fatal to the fairness of the trial when viewed in the context of the entire proceeding. In his summation, defense counsel properly told the jury that Moore sustained a "[f]racture to the 7th rib. It's in the medical records. He was ex-rayed [sic]. He suffered a fractured rib." (T. 600). The jury requested Moore's records during deliberations (T. 702), and the jury was entitled to interpret them and determine their materiality. See Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) (when a federal court rules on a state prisoner's habeas petition, "assessments of the weight of the evidence or the credibility of witnesses are for the jury

and not grounds for reversal on appeal; [courts] defer to the jury's assessments of both of these issues"); cf. United States v. Tarricone, 21 F.3d 474, 476 (2d Cir. 1993) (finding that under the circumstances of the case, defense counsel's decision not to present an expert was "a strategic choice counsel was entitled to make").  The jury could see for itself that the prosecutor was wrong about the fracture.  In any event, the severity of Moore's injury was not a critical issue at trial: whether Moore sustained a fracture or a contusion did not indicate whether he possessed a narcotic, tampered with evidence, or resisted a lawful arrest, thereby injuring an officer.  Cf. United States v. Pabisz, 936 F.2d 80, 83 (2d Cir. 1991) (finding that the fundamental fairness of the trial was undermined where the "pivotal issue" was the defendant's good faith defense, the court erroneously instructed the jury about the defense, and the prosecutor's summation heightened the potential that the jury would be misled about the defense).  In light of the above, the prosecutor's misstatement about Moore's injury did not cause substantial prejudice and thus did not amount to a denial of due process.

> b.  **The Curative Measures**

The trial judge did not cure any of the prosecutor's comments during the prosecution's summation, but the judge's charge was sufficient to correct any prejudice.  The judge instructed the jurors that they could not consider anything outside of the evidence and that their own understanding of the evidence -- not the attorneys' understanding -- was

controlling.[13]  See <u>Bradley v. Meachum</u>, 918 F.2d 338, 341-44 (2d Cir. 1990) (holding that where a state prosecutor repeatedly referred to his personal view of the evidence in his summation and the only corrective action was the trial judge's standard jury instruction that arguments of counsel are not to be considered evidence, the cumulative effect of the statements did not require a finding of substantial prejudice).

---

[13]  The jury charge stated that:

It is your function to determine from the evidence presented to you, whether the defendant is guilty or not guilty of the charges submitted to you.

You must not under any circumstances indulge in speculation or guesswork.  You're not to consider anything outside of the evidence. Your own recollection, understanding and evaluation of the evidence at this trial is what controls, regardless of what the attorneys have said about the evidence, and even regardless of what the Court may say about the evidence.  You and you alone must determine from all of the evidence in the case what the facts are.

. . . .

You're not bound to accept the arguments of counsel.  If you find that any argument made by either of them is reasonable and logical and based upon the evidence as you recall it, and is consistent with that evidence, you're free to accept that argument as your own and to give it such weight as you deem advisable.

On the other hand, if you find that any argument or conclusion is not based upon the evidence or that it is unreasonable, illogical, or inconsistent with the evidence, you may disregard it entirely.

(T. 662-64).

### c. The Certainty of Conviction

The case against Moore was strong. He presented no evidence to dispute the evidence that a bag containing cocaine came out of his mouth or to undermine the testimony of five police officers that he resisted arrest and caused injury to an officer.

In sum, given the context of the prosecutor's comments, the sufficiency of the court's charge, and the strength of the evidence, I find that the prosecutor's summation comments did not substantially prejudice Moore's right to a fair trial, and the claim is denied. Moore has failed to show that he is custody in violation of federal law.

### CONCLUSION

For the foregoing reasons, Moore's petition for a writ of habeas corpus is denied. As Moore has not made a substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability. See 28 U.S.C. § 2253 (1996) (as amended by the AEDPA). I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this decision would not be taken in good faith.

The Clerk of the Court shall close this case.

SO ORDERED.

Dated:    New York, New York
          August 8, 2005

                              DENNY CHIN
                              United States District Judge